1  Douglas P. Roy, SBN 241607
   doug@cypressllp.com
2  CYPRESS LLP
   11111 Santa Monica Blvd., Suite 500
3  Los Angeles, California 90025
   Telephone: (424) 901-0123
4  Facsimile: (424) 750-5100

5  David M. Pohl (admitted *pro hac vice*)
   david.pohl@pohllaw.com
6  POHL LLP
   345 Seventh Avenue, 21st Floor
7  New York, NY 10001
   Telephone: (212) 202-1614
8  Facsimile: (646) 924-3100

9  Attorneys for Defendants
   BLUE PLATE COUTURE INC. AND SIMONIA FASHIONS INC.
10

   **UNITED STATES DISTRICT COURT**
11
   **CENTRAL DISTRICT OF CALIFORNIA**
12

13 GOLD VALUE INTERNATIONAL            Case No.: 2:14-cv-05876 (RGK) (PJW)
   TEXTILE, INC., a California
14 Corporation, individually and doing  **NOTICE OF MOTION AND**
   business as "FIESTA FABRIC,"          **MOTION TO DISMISS THE**
15                                       **COMPLAINT; MEMORANDUM**
                                         **OF POINTS AND AUTHORITIES**
16              Plaintiff,               **IN SUPPORT THEREOF**

17       v.                             **FED. R. CIV. P. 12(b)(2) and 12(b)(6)**

18 BLUE PLATE COUTURE INC.,
   individually, and doing business as  Hon:    R. Gary Klausner
19 "BLUE PLATE," a New York             Date:   November 17, 2014
   Corporation; ALIGHT.COM, a New       Time:   9:00 a.m.
20 York Business Entity of Form          Place:  U.S.D.C.
   Unknown; SIMONIA FASHIONS                    Roybal Federal Building
21 INC., a New York Corporation; and            255 E. Temple Street
   DOES 1 through 10,                           Los Angeles, CA 90012
22              Defendants.

23

24

25

26

27

28

1    TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on November 17, 2014, at 9:00 a.m., or as soon

3  thereafter as this matter can be heard before the Honorable R. Gary Klausner of the

4  United States District Court for the Central District of California, in Courtroom 850

5  of the above-entitled Court, located at the Edward R. Roybal Federal Building and

6  United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332,

7  Defendants Blue Plate Couture Inc. and Simonia Fashions Inc. ("Defendants") will

8  and hereby do move, pursuant to Rules 12(b)(2) and 12(b)(6), for an order dismissing

9  all claims against them in this action with prejudice ("Motion").

10    This Motion is brought pursuant to Rule 12(b)(2) on the grounds that this Court

11  lacks personal jurisdiction over the moving Defendants, all of whom are domiciled

12  out-of-state.

13    This Motion is brought pursuant to Rule 12(b)(6) on the ground that, even were

14  the Court to have personal jurisdiction over Defendants:

15    a.    Plaintiff's first claim for copyright infringement fails to state a claim

16          upon which relief can be granted; and

17    b.    Plaintiff's second claim for "Vicarious and/or Contributory Copyright

18          Infringement" fails to state a claim upon which relief can be granted.

19    This Motion is based on this Motion and Notice of Motion, the supporting

20  Memorandum of Points and Authorities, the Declaration of Shashi Anand, dated

21  September 29, 2014, the Request for Judicial Notice filed in support of this Motion,

22  and upon such oral argument and submissions that may be presented at or before any

23  hearing on this Motion.

24    This Motion is made following the conference pursuant to L.R. 7-3 which took

25  place on September 12, 2014.

26

27

28

1   Dated: New York, New York          POHL LLP
2            September 30, 2014

3                                      By:    /s/ David M. Pohl
                                              David M. Pohl (*pro hac vice*)
4

5                                      345 Seventh Avenue, 21st Floor
                                       New York, New York 10001
6                                      (212) 202-1614
                                       (646) 924-3100 (fax)
7

8                                      Douglas P. Roy, SBN 241607
                                       CYPRESS LLP
9                                      11111 Santa Monica Blvd., Suite 500
                                       Los Angeles, California 90025
10                                     (424) 901-0123
                                       (424) 750-5100 (fax)
11

12                                     *Attorneys for Defendants Blue Plate*
                                       *Couture Inc. and Simonia Fashions Inc.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF FACT ...................................................................... 2

      A.    Blue Plate's Lack of Contacts with California ........................... 2

      B.    The Transaction at Issue ......................................................... 3

III.  ARGUMENT .................................................................................. 7

      A.    The Complaint Fails to State a Copyright Infringement Claim ................. 7

            1.   The Court is Authorized to Determine whether Copyright Infringement
                 has Occurred as a Matter of Law ................................................. 7

            2.   Every Protectable Expressive Element in the Accused Peacock Design
                 is Unique from Plaintiff's Peacock Design ...................................... 10

      B.    The Claim for Vicarious/Contributory Infringement Must Fail ................. 16

      C.    The Complaint Should be Dismissed for Lack of Personal Jurisdiction ...... 16

            1.   Defendants are not Subject to General Jurisdiction .......................... 16

            2.   Defendants are not Subject to Specific Jurisdiction .......................... 18

                 a.    The Purposeful Direction Test is not Satisfied .......................... 19

                 b.    Blue Plate's De Mininmus Sale in California is Insignificant ....... 21

                 c.    Blue Plate's Website Cannot Support Express Aiming ............... 23

                 d.    Defendants Could Not have Knowingly Caused Harm
                       in California ................................................................. 24

                 e.    The Exercise of Jurisdiction Would Be Unreasonable ............... 25

IV.   CONCLUSION............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation v. Cosmos Furniture, Ltd.*,
  2009 WL 806603 (C.D.Cal. Mar. 16, 2009)............................................. 20

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ............................................................. 8, 11

*Arista Records LLC v. Myxer Inc.*,
  2011 WL 11660773 (C.D. Cal. Apr. 1, 2011) ......................................... 16

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ................................................... 17, 18, 20

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ............................................................... 7

*BJI Energy Solutions, LLC v. Artemis Technologies d/b/a Alpha-Lite*,
  2004 WL 1498164 (C.D. Cal. June 17, 2004) (Klausner, J.) (no
  California property or facility, office, mailing address, telephone, fax,
  answering or message service, vehicles, bank accounts, employees or
  agents and do not target California)...................................................... 17

*Brand v. Menlove Dodge*,
  796 F.2d 1070 (9th Cir. 1986) ............................................................. 18

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ............................................................. 24

*Browne v. McCain*,
  612 F. Supp. 2d 1118 (C.D. Cal. 2009) ................................................. 19

*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................... 19, 20, 21, 24

*Cameron Indus., Inc. v. Mother's Work, Inc.*,
  338 F. App'x 69 (2d Cir. 2009) ........................................................... 15

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ........................................................... 8, 15

*CollegeSource, Inc. v. AcademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) .......................................................... 17, 18

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,*
   106 F.3d 284 (9th Cir. 1997) ................................................................ 20

*Corbis Corp. v. Integrity Wealth Mgmt., Inc.,*
   2009 WL 2486163 (W.D.Wash. Aug. 12, 2009) ....................................... 20

*Data East USA, Inc. v. Epyx, Inc.,*
   862 F.2d 204 (9th Cir. 1988) ................................................................ 15

*DFSB Kollective Co. Ltd. v. Bourne,*
   897 F. Supp. 2d 871 (N.D. Cal. 2012) ................................................ 23, 24

*Durham Indus., Inc. v. Tomy Corp.,*
   630 F.2d 905 (2d Cir. 1980) ............................................................... 9, 16

*Erickson v. Blake,*
   839 F. Supp. 2d 1132 (D. Or. 2012) ..................................................... 9, 10

*Folio Impressions, Inc. v. Byer California,*
   752 F. Supp. 583 (S.D.N.Y. 1990), *aff'd*, 937 F.2d 759 (2d Cir. 1991)................ 14

*Funky Films Inc. v. Time Warner Entm't Co., L.P.,*
   462 F.3d 1072 (9th Cir.2006) ................................................................. 7

*Gilbert v. New Line Productions, Inc.,*
   2009 WL 7422458 (C.D. Cal. Nov. 16, 2009) ............................................ 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
   284 F.3d 1114 (9th Cir. 2002) ............................................................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   131 S. Ct. 2846 (2011) ........................................................................ 16

*Gorski v. The Gymboree Corp.,*
   2014 WL 3533324 (N.D. Cal. July 16, 2014) ............................................ 9

*Gund, Inc. v. Applause, Inc.,*
   809 F. Supp. 304 (S.D.N.Y. 1993) .......................................................... 9

*Hanevold v. Hsu,*
   2011 WL 6026513. (E.D. Cal. Dec. 2, 2011) ............................................. 21

*Hawaii Airboards v. Nw. River Supplies, Inc.*,
   887 F. Supp. 2d 1068 (D. Haw. 2012)........................................................23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)................................................................................17

*Just In-Materials Designs, Ltd. v. First Choice Fabrics, Inc.*,
   1988 WL 5377 (S.D.N.Y. Jan. 14, 1988) ...................................................14

*Katzenbach v. Grant*,
   2005 WL 1378976 (E.D. Cal. June 7, 2005) .........................................20, 21

*Klauber Bros., Inc. v. Westchester Lace Inc.*,
   1989 WL 31679 (S.D.N.Y. Mar. 30, 1989)..........................................14, 15

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) .....................................................................10

*Lang v. Morris*,
   823 F. Supp. 2d 966 (N.D. Cal. 2011)........................................................21

*Lenox Inc. v. Ranmaru U.S.A. Corp.*,
   1990 WL 263435 (S.D.N.Y. Aug. 13, 1990)..............................................15

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ...................................................................24

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989) ......................................................................8

*New Tech Stainless Steel Products Co., Ltd. v. Sun Mfg. Corp.*,
   2004 WL 1773416 (C.D. Cal. July 20, 2004) (Klausner, J.)................16, 17, 22

*Righthaven, LLC v. Va. Citizens Def. League, Inc.*,
   2011 WL 2550627 (D. Nev. June 23, 2011)...............................................20

*Rio Properties. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...................................................................24

*Samara Bros., Inc. v. Wal–Mart Stores, Inc.*,
   165 F.3d 120 (2d Cir. 1998)......................................................................10

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .......................................................17, 18, 19, 24

*Shaw v. Lindheim,*
    919 F.2d 1353 (9th Cir. 1990) ................................................................ 8, 9

*Sher v. Johnson,*
    911 F.2d 1357 (9th Cir. 1990) .................................................................... 22

*Smith v. Jackson,*
    84 F.3d 1213 (9th Cir. 1996) ........................................................................ 8

*Star Fabrics, Inc. v. DKJY, Inc.,*
    2014 WL 102809 (C.D. Cal. Jan. 9, 2014) ................................................. 10

*Sun Hill Indus., Inc. v. Four Seasons Products, Inc.,*
    1993 WL 77384 (S.D.N.Y. Mar. 16, 1993) ................................................ 15

*Tuazon v. R.J. Reynolds Tobacco Co.,*
    433 F.3d 1163 (9th Cir. 2006) .............................................................. 17, 18

*Tuna Processors, Inc. v. Anova Food, Inc.,*
    2007 WL 3232609 (D. Or. Nov. 1, 2007) .................................................... 23

*Washington Shoe Co. v. A-Z Sporting Goods Inc.,*
    704 F.3d 668 (9th Cir. 2012) ........................................................ 19, 20, 21

*Wood v. Northwest Airlines, Inc.,*
    2010 WL 2485946 (D.Ha. 2010) ................................................................ 21

*World-Wide Volkswagen v. Woodson,*
    444 U.S. 286 (1980) ............................................................................ 16, 22

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    379 F.3d 1120 (9th Cir. 2004) .................................................................... 25

*York Wallcoverings, Inc. v. Coloroll Inc.,*
    681 F. Supp. 1004 (E.D.N.Y. 1987) ........................................................... 13

*Zella v. E.W. Scripps Co.,*
    529 F.Supp.2d 1124 (C.D.Cal. 2007) .......................................................... 8

*Zuffa, LLC v. Showtime Networks, Inc.,*
    2007 WL 2406812 (D. Nev. Aug. 17, 2007) ............................................... 21

**Statutes**

Copyright Act ...................................................................................... 1, 2

1

## PRELIMINARY STATEMENT[1]

2     In 2013, the moving Defendants obtained a small yardage of fabric from a
3 manufacturer in India who purchased it on an open market there. The fabric features
4 an artistic expression of peacock feathers and fan formations. Defendants used this
5 peacock fabric to make certain clothing. Plaintiff, based in California, has also
6 apparently created fabric featuring an artistic expression of peacock feathers and fan
7 formations. Plaintiff contends that the fabric used by Defendants was necessarily
8 copied from Plaintiff's fabric. This contention is meritless.

9     Nobody owns the image of naturally occurring things such as peacock feathers
10 and fan formations. Such ideas are non-protectable under copyright law. What is
11 protectable is an individual author's creative expression of that idea. Here, as a
12 review of the two fabrics makes clear, there is no commonality in protectable
13 expression. The two artistic expressions of the peacock concept are dissimilar in every
14 respect. Accordingly, Plaintiff's copyright claims fail as a matter of law.

15     However, this action must also be dismissed because the moving Defendants
16 are not subject to personal jurisdiction in California. They operate in New York.
17 They have no presence in California whatsoever and have not expressly aimed any
18 conduct there. They have done nothing to reasonably anticipate being haled into
19 Court there.

20     The moving Defendants respectfully request that the Court reach the merits of
21 the copyright claim, in any event. Plaintiff should not be enabled to re-file its
22 baseless claims, filed solely to extract a quick settlement, in New York.

23     Defendants respectfully submit that the Court should dismiss this action and
24 permit Defendants leave to file a fee application under the fee-shifting provisions of
25 the Copyright Act.

26

27    [1] Defendants respectfully request that, if appropriate, the Court determine this motion without oral hearings pursuant to FRCP 78 and Local Rule 7-15.

28

## STATEMENT OF FACTS[2]

### A.   Blue Plate's Lack of Contacts with California

Blue Plate is a three-generation, family business founded by Shashi Anand in 1981. Anand Decl., ¶ 2. It sells ready-made garments and home furnishings. *Id.* Ms. Anand and her family built Blue Plate from nothing into a successful company. *Id.*, ¶ 3. Blue Plate and affiliates have only had offices in New York. *Id.*, ¶ 9.

Neither Blue Plate nor either named Defendant has any meaningful contacts with California or has targeted California consumers. *Id.*, ¶ 7. Blue Plate's sparse connections to California over the years have been isolated and fortuitous at best. *Id.* Neither Blue Plate nor either named Defendant has any continuous or systematic business contacts in California. *Id.*, ¶ 11. None maintains an office, showroom or storefront in California or otherwise has any physical presence there, *id.*, ¶ 12, conducts solicitations of business targeting California consumers, maintains bank accounts or other property in California, has any employees or agents there or holds any license in California, *id.*, ¶ 13, has a sales representative, distributor or any other kind of sales force or agent in California, *id.*, ¶ 16, or has ever placed any advertisements targeting California consumers, *id.*, ¶ 15. Blue Plate's operations, as well as their facilities, officers and employees, are in New York. *Id.*, ¶ 14. Blue Plate does not have a distribution channel in or to California. *Id.*, ¶ 17. Neither Blue Plate nor either named Defendant has or has had an on-going contractual relationship with any California vendor or corporation or been required to pay any taxes in California. *Id.*, ¶ 18. None serves California's market in any way. *Id.*, ¶ 19.

---

[2] This motion is brought by Defendants Blue Plate Couture, Inc. and Simonia Fashions Inc., neither of which have done any business for several years (since well before any relevant time period). They were erroneously sued. Declaration of Shashi Anand, dated September 29, 2014 ("Anand Decl."), ¶ 1, fn. 1. An affiliate of these two entities, Blue Plate of USA, Inc., has had operations. *Id.* "Blue Plate" refers to Blue Plate of USA, Inc. The term "named Defendants" refers to Blue Plate Couture, Inc. and Simonia Fashions.

Blue Plate's website (www.blueplatefashion.com) allows visitors to purchase ready-made items (it does not permit custom orders) and, like most websites, it is equally available to all people using the Internet. *Id.* Blue Plate's website has at no time targeted California residents or been aimed at California in any way. *Id.*, ¶ 20. The website does not even mention California anywhere and, it is believed, never has. *Id.* (Blue Plate has never offered for sale through its website any item containing the accused peacock design. *Id.*, ¶¶ 19 fn. 2, 44.) Blue Plate's website has no advertisements, let alone advertisements that might target the California market. *Id.*, ¶ 21. Nor does Blue Plate (or its website) have any particular focus on California. *Id.*

Any contact Blue Plate has had with California consists of nominal, occasional, isolated and unsolicited orders placed by purchasers who chose to provide a California shipping address. *Id.*, ¶ 22. Indeed, a mere 1.1% of Blue Plate's total sales since January 1, 2011, have been to California consumers. *Id.*, ¶ 23 (1.43% in 2011; 2.1% in 2012; 0% in 2013; and 1.24% in 2014). Blue Plate did nothing to target or solicit these sales to California consumers. *Id.*, ¶ 24.

Neither Blue Plate nor any named Defendant has ever purposefully directed or aimed any activity toward California. *Id.*, ¶ 25. Blue Plate sells products worldwide, without targeting California in any way, shape or form. *Id.*, ¶ 26; *see also id.*, ¶ 27.

**B.    The Transaction at Issue**

Blue Plate purchases fabrics from a third-party manufacturer in India. *Id.*, ¶ 28. In 2011 and 2012, Blue Plate purchased a small yardage of the fabric shown at paragraph 15 of the Complaint from this manufacturer. *Id.*, ¶ 29.  (Blue Plate has never produced the peacock design at issue in this case. *Id.*)  This manufacturer typically purchases fabric on an open, local market in India where anybody can purchase it. *Id.*, ¶ 30. In fact, this manufacturer purchased the accused peacock fabric at such a market where it was available to any and all purchasers. *Id.* In her accompanying declaration at paragraph 31, Ms. Anand provides this image that Blue

Plate received from the manufacturer showing the accused peacock fabric purchased
in India (this is the same fabric that is shown in the Complaint, ¶ 15):



In or about April 2013, co-defendant Alight.com, a New York business with its
only address in New York, came to Blue Plate's showroom in New York City, viewed
a swatch of the accused design and asked Blue Plate to arrange a custom-order of 48
plus-size dresses to be sold by Alight.com. *Id.*, ¶ 32. This amounted to $768 in sales
for Blue Plate, or .05% of Blue Plate's total 2013 sales. *Id.*, ¶ 33. The manufacturer
in India made the dresses and, in April 2013, delivered them. *Id.*, ¶ 34.

In February 2014, Blue Plate received a letter from a company identifying itself
as "Gold Value International Textile, Inc., doing business as 'Fiesta Fabric,'"
claiming that the fabric used in the dresses sold by Alight.com was copied from a

1  fabric design of which Plaintiff claimed to be the author. *Id.*, ¶ 35.  At the time Blue

2  Plate received this notice, neither it nor either named Defendant had ever even heard

3  of "Gold Value International Textile, Inc." or "Fiesta Fabric." *Id.*, ¶ 36.  Blue Plate

4  simply did not even know this company existed. *Id.*  Therefore, Blue Plate of course

5  (until being contacted by this company) had no idea that "Gold Value International

6  Textile, Inc." or "Fiesta Fabric" might own any copyright to any particular fabric

7  design (let alone any design Blue Plate may have obtained from a third-party

8  manufacturer in India), *id.*, ¶ 37, or that any such company was located in California,

9  *id.*, ¶ 38.  Blue Plate could not have possibly known that any Blue Plate conduct could

10  possibly harm this company (that Blue Plate had never heard of) in California (where

11  Blue Plate did not know they were located). *Id.*

12          Notwithstanding its belief that Plaintiff's copying allegations are meritless,

13  Blue Plate asked Alight.com to remove the dresses from its website. *Id.*, ¶ 39.  It is

14  believed that the dress was removed before any were sold. *Id.*, ¶ 39.  (Blue Plate at no

15  time had any reason to expect or believe that Alight.com might target California

16  consumers – or any particular State's consumers – with sales of these dresses. *Id.*)

17          Blue Plate also informed Plaintiff at the time Plaintiff contacted Blue Plate that,

18  based on its review of its records to date at that time, Blue Plate believed that the sale

19  to Alight.com was the only sale of units containing the accused peacock design. *Id.*, ¶

20  40.[3]  Plaintiff then filed this lawsuit in California, requiring Blue Plate to expend

21  resources and defend itself in California. *Id.*, ¶ 41.

22          In connection with the preparation of Ms. Anand's accompanying declaration,

23  Blue Plate completed its review of its records. *Id.*, ¶ 42.  Based on this review, Blue

24  Plate discovered three other customer orders that each included a *de minimis* amount

25

26  [3]    Blue Plate has not used the accused peacock design for any purpose after
27      receiving notice from Plaintiff that it believes the accused fabric violates
        Plaintiff's copyright. *Id.*, ¶ 38 fn. 3.

28

of units containing the accused peacock design, all in 2012. *Id.*, ¶ 42. (Blue Plate took a total of 504 orders in 2012. *Id.*) These units represent approximately 0.6% of Blue Plate's total 2012 sales. *Id.* Blue Plate took orders that included the following amounts of units containing the accused design:

- One order of custom-made dresses to Alight.com, amounting to $672 in sales, or 0.06% of Blue Plate's total 2012 sales.
- One order of custom-made blouses to a Minnesota store ("Customer A"), amounting to $4316 in sales, or 0.3% of Blue Plate's total 2012 sales.
- One order of custom-made blouses to a California-based, Internet-only store ("Customer B"), amounting to $2,616 in sales, or 0.2% of total 2012 sales.

*Id.*, ¶ 42. All three of these orders (like the April 2013 sale to Alight.com) were custom orders. *Id.*, ¶ 43. These were <u>not</u> orders placed through Blue Plate's website or using the website in any way. *Id.* The accused design has never been used in any item sold on Blue Plate's website. *Id.*, ¶ 44.

With respect to Customer B, Blue Plate did nothing to solicit this sale. *Id.*, ¶ 45. Blue Plate did not reach out to this customer; it contacted Blue Plate seeking to place an order for blouses. *Id.* The customer chose a fabric, which happened to be the accused design at issue, from among others and asked Blue Plate to arrange for the manufacture of the single order. *Id.* The customer provided a California address for shipping. *Id.* Blue Plate arranged for a third-party manufacturer in India to create the blouses and ship them. *Id.*, ¶ 46. That this customer happened to be from California was not the result of any conduct by Blue Plate, and is a completely random circumstance. *Id.*, ¶ 47. In general, when a potential customer contacts Blue Plate seeking to place an order, Blue Plate will work with that customer. *Id.*

Moreover, Blue Plate never did, or had any reason to, consider to whom Customer B might sell the dresses. *Id.*, ¶ 48. However, because Customer B is an Internet-based company with no actual, brick-and-mortar storefronts, there would be no reason to presume that Customer B would seek to sell the blouses (or any of its

1  products) to any particular State's consumers. *Id.* If Customer B did, in fact, seek to

2  sell the dresses, it could have only offered them to visitors of its website, wherever

3  those consumers might be throughout the world. *Id.* Blue Plate at no time had any

4  reason to expect or believe that Customer B might seek to make Internet sales (or any

5  other sales, for that matter) to California consumers in particular. *Id.*, ¶ 49.

6        The financial burden placed on Blue Plate, a family business with no presence

7  in California whatsoever, has already been substantial and will continue to be if it is

8  required to litigate this case in California. *Id.*, ¶ 50.

9  **ARGUMENT**

10  **A.   The Complaint Fails to State a Copyright Infringement Claim**

11        Plaintiff contends that the accused peacock design is substantially similar to its

12  peacock design.  An examination of the two designs, however, shows that there is no

13  area of commonality in protectable expression.  Indeed, the only similarities between

14  the two designs are drawn directly from the fact that both depict peacock feathers and

15  fan formations – naturally occurring things.  The two artistic expressions of these

16  unprotectable natural concepts are dissimilar in every respect – including the shapes,

17  placement, composition, size and coloration.  Plaintiff's infringement claim must fail.

18
19        **1.   The Court is Authorized to Determine whether Copyright Infringement has Occurred as a Matter of Law**

20        "To establish a successful copyright claim, a plaintiff must show: (1) his

21  ownership of the copyright; (2) the defendant's access to his work; and (3)

22  'substantial similarity' between the defendant's work and his own." *Berkic v.*

23  *Crichton*, 761 F.2d 1289, 1291 (9th Cir. 1985).  The issue here is whether, as a matter

24  of law, Plaintiff may establish substantial similarity. *See Funky Films Inc. v. Time*

25  *Warner Entm't Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir.2006) ("No amount of proof

26  of access will suffice to show copying if there are no similarities.") (citation omitted).

27        "'[W]hen the copyrighted work and the alleged infringement are both before

28

the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'" *Gilbert v. New Line Productions, Inc.*, 2009 WL 7422458, *2 (C.D. Cal. Nov. 16, 2009), quoting *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130 (C.D.Cal. 2007) (same).

The Ninth Circuit requires a two-part test for substantial similarity. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). The "extrinsic test" is an "objective comparison of specific expressive elements"; it focuses on the "articulable similarities" between the two works. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The "intrinsic test" focuses on "whether the ordinary, reasonable audience would find the works substantially similar." *Id.* (quotation omitted).

"The intrinsic component is subjective and 'is exclusively the province of the jury.'" *Gilbert*, 2009 WL 7422458, *2, quoting *Funky Films, Inc.*, 462 F.3d at 1077. "Nevertheless, because the plaintiff needs to satisfy both the extrinsic and intrinsic components of the substantial similarity test to establish infringement, a finding of lack of extrinsic similarity is fatal to the plaintiff's copyright case as a matter of law." *Id.* The Ninth Circuit has "frequently . . . affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989). As the Northern District recently explained:

> Applying the extrinsic test is a three-step process. First, the Court must confirm that plaintiff has "identif[ied] the source(s) of the alleged similarity between his work and the defendant's work." [*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)]. Second, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." [*Id.*]; *see also Cavalier*, 297 F.3d at 822 (directing district court to "filter out and disregard the non-protectible elements" when conducting the extrinsic test). . . . Third, the Court must determine whether there is "substantial similarity" between the protectable elements of the copyrighted work and the allegedly infringing work. [*Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)]; *see also Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (noting that when applying the extrinsic test, the salient inquiry is whether the protectable elements of the respective works are substantially similar); *Cavalier*, 297 F.3d at 822 (noting that the Court must "take care

1  to inquire only whether the protectable elements standing alone are
   substantially similar").

2  *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, *4 (N.D. Cal. July 16, 2014).

3      "Importantly for purposes of th[e] second step, not every element of a

4  copyrighted work is protected by copyright law." *Id.*, citing *Feist Publications, Inc. v.*

5  *Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is

6  copyrighted does not mean that every element of the work may be protected. . . .

7  [C]opyright protection may extend only to those components of a work that are

8  original to the author.").  "Unprotected elements of a copyrighted work can include

9  (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the

10  underlying ideas; (3) standard or stock elements (*scènes à faire*); and (4) facts and

11  other public information." *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1136 (D. Or.

12  2012).  Thus, "where the protected work and the accused work express the same idea,

13  the similarity that inevitably stems solely from the commonality of the subject matter

14  is not proof of unlawful copying." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905,

15  913 (2d Cir. 1980).  As one court explained while comparing two stuffed floppy dogs:

16      [A]nyone can make a stuffed floppy dog, and all floppy dogs may share
        certain characteristics inherent in the idea of a floppy dog, such as the
17      fact that they flop on their stomach, have no set shape, and are extremely
        huggable.  The issue then becomes whether the essential "expression" of
18      [one dog] – which flows not from the commonality of characteristics of
        floppy dogs, but from the way in which the characteristics have been
19      designed and projected to produce a whole "look" – is such that it must
        be seen as copied from [another dog].
20

21  *Gund, Inc. v. Applause, Inc.*, 809 F. Supp. 304, 308 (S.D.N.Y. 1993).  In *Gund, Inc.*,

22  the Court found no substantial similarity because "any similarity between the two

23  dogs would appear to the ordinary observer to result solely from the fact that both are

24  more or less nonnaturalistic, reclining, huggable, floppy dogs." *Id.*; *see also Shaw*,

25  919 F.2d at 1360-61 ("A determination that a bee fashioned by a jeweler, or a stuffed

26  animal produced by a toymaker, embodies an idea – the form of a natural creature –

27  that cannot be separated from its expression, primarily involves the observer's

28

1  physical senses" and is "well-suited" for summary judgment.); *Erickson*, 839 F. Supp.
2  2d at 1137 ("The idea of a stuffed dinosaur toy can only be expressed in the form of a
3  stuffed animal shaped like a dinosaur"; no infringement "if the only similarities are
4  the physiognomy of the dinosaur species" and use of similar fabric and material).

5    As this Court recently observed, Plaintiff "does not own a copyright in all
6  peacock-eye patterns, as a peacock pattern is a naturally occurring element that is
7  unprotectable under copyright law." *Star Fabrics, Inc. v. DKJY, Inc.*, 2014 WL
8  102809, *4 (C.D. Cal. Jan. 9, 2014).  Naturally occurring objects enjoy weak
9  copyright protection. *Samara Bros., Inc. v. Wal–Mart Stores, Inc.*, 165 F.3d 120, 132
10 (2d Cir. 1998) (the depiction of a "familiar object" enjoys only a narrow copyright).

11   In comparing the protectable elements of fabric designs, courts "examine the
12 similarities in their 'objective details in appearance,' including, but not limited to, 'the
13 subject matter, shapes, colors, materials, and arrangement of the representations.'"
14 *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012),
15 quoting *Cavalier*, 297 F.3d at 826.

16     **2.    Every Protectable Expressive Element in the Accused Peacock**
17            **Design is Unique from Plaintiff's Peacock Design**

18   The two peacock designs at issue are properly before the Court.[4]  Defendants
19 respectfully submit that there is no area of commonality in protectable expression to
20 be found.  Every expressive element is different.  The only similarities between the
21 two designs stem from the fact that both depict the idea of peacock feathers.

22   Peacock feathers are organic items found in nature and, as any lay observer can
23 see, a peacock's feathers are arranged in a fan formation. Both designs in this case
24 feature depictions of this naturally occurring fan formation, i.e., the naturally
25 occurring series of feathers arranged in circular patterns that extend and radiate

26
27  [4]  Plaintiff's peacock design is found in paragraph 14 of the Complaint.  The
    accused peacock design is provided at paragraph 31 of the Anand Declaration.
28

outward like a fan.  Any lay observer can also tell that peacocks have "eye feathers," i.e., feathers containing spots that look like eyes (with a pupil-like dot in the middle). Both Plaintiff's design and the accused design have eye feathers.  Also, peacock feathers often have thread-like (or hair-like) bristles that radiate out from the top of the feathers.  Both designs have these bristles.

Indeed, the two designs feature the same concepts of non-protectable, naturally occurring peacock feathers and fan formations.  But "the party claiming infringement may place *no* reliance upon any similarity in expression resulting from unprotectable elements." *Apple Computer, Inc.*, 35 F.3d at 1446 (quotation omitted; emphasis in original).  The protectable elements of the two designs do not even closely resemble each other.  Their creative *expressions* are wholly dissimilar.

To start, they have completely different color schemes.  Plaintiff's peacock design features only white and blue feathers within each fan formation.  The color scheme of these formations is based on concentric circles; each circular layer within the fan formation maintains the same color throughout that circular level.  The color of the feathers is determined by what layer of the concentric circle the feather is in. Meanwhile, the accused peacock design features a collection of fanciful colors – yellow, pink, purple and white feathers – within the fan formations.  This color scheme is distinctly not based on concentric circles.  Instead, the colors scheme is based on straight lines of feathers that extend and radiate outward within the fan formation, and each such line maintains the same consistent color throughout that line.  These outwardly extending straight lines alternate between lines of (i) pink feathers with white dots, (ii) white feathers with yellow dots, (iii) yellow feathers with red dots and (iv) purple feathers with black dots – black dots that themselves usually contain a white crescent-moon-like sliver within the black dot.[5]  These arrangements

---

[5]      The fan formation extending downward from the top of the image of the accused peacock design at paragraph 31 of the Anand Declaration features a (footnote continued)

1 │ are completely unique from anything in Plaintiff's peacock design.  And similarly, the

2 │ concentric circle motif of plaintiff's design is wholly foreign to the accused design,

3 │ giving the two wholly dissimilar overall appeals.

4 │    Also, the composition of the feathers in the accused peacock design is

5 │ completely different – in every protectable aspect – from those in Plaintiff's design.

6 │ Each large feather in the accused design (appearing mostly at the outer edges of the

7 │ fan formations) is one of four types:

8 │   (i) A yellow feather with a formation of 9 red dots over the yellow part,

9 │     containing a blue eye with a black pupil that often contains a small white

10 │     crescent-moon-like sliver within the pupil;

11 │   (ii) A pink feather with a formation of 9 black dots over the pink part,

12 │     containing a white eye with a yellow pupil;

13 │   (iii) A blue feather with a formation of 5 pink dots over the blue part,

14 │     containing a white eye with a black pupil in the middle; or

15 │   (iv) Most predominantly, a blue feather with no dot formation over the blue

16 │     part, with 7-9 yellow thread-like bristles radiating out from the top of the

17 │     feather, and containing a white eye that itself contains 8 red dots organized

18 │     in a pattern in which 6 of those red dots are in a circle (1 dot is in the

19 │     middle) and the remaining 2 red dots jet out toward the top of the feather.

20 │ None of these feather compositions appears in Plaintiff's peacock design.  Plaintiff's

21 │ design features largely blue feathers with white eyes and black or blue pupils, as well

22 │ as white feathers with light blue eyes and no pupils, and some light blue feathers with

23 │ dark blue eyes and no pupils.  These bear no similarity to the accused design (aside

24 │ from those inherent in the natural concept of peacock eye feathers).  None of

25 │

26 │    slightly different set of straight, outwardly extending lines of feathers.  These
   lines alternate between lines of (i) pink feathers with white dots, (ii) yellow

27 │    feathers with purple dots, (iii) purple feathers with white dots and (iv) blue
   feathers with pink dots.

28 │

1   Plaintiff's feathers contains any type of dot formation like the creative dot formations
2   featured in the accused design.  The only dots in Plaintiff's design are the naturally
3   occurring (and nonprotectable) pupils themselves.

4          Also, the shapes of the feathers seen in the accused peacock design are
5   markedly different than the shapes of the feathers in plaintiff's design.  Plaintiff's
6   feathers are, more or less, consistently shaped as standard ovals; they are usually
7   rounded, though some come to a slight point, or tip.  The accused peacock design,
8   however, features large feathers (those enumerated above in romanettes) that, while
9   oval-shaped on one end, feature a rounded extension coming off the top of the feather
10  – as if a smaller oval has been imposed over the larger oval, with half of the smaller
11  oval extending from the top of the larger oval.  This somewhat pear-shaped feather
12  dominates the accused design but appears <u>nowhere</u> in Plaintiff's peacock design.

13         The accused peacock design contains yet another feature found nowhere in
14  Plaintiff's peacock design: certain white eyes – standing on their own, not contained
15  within any feather – that contain pink pupils.  They appear in the accused peacock
16  design so as to fill empty space between the largest feathers.  Plaintiff's design has no
17  such stand-alone eyes.  In fact, there is no space on Plaintiff's peacock design where
18  any such stand-alone eyes could fit, given that Plaintiff's design features fan
19  formations that are crowded together – often on top of each other – with little-to-no
20  room between them.  The accused design's more spaced-out fan formations and
21  feathers leave room in between for these stand-alone white eyes with pink pupils.  In
22  fact, this more airy, or uncluttered, feature of the accused peacock design further
23  distinguishes it from Plaintiff's peacock design and the crowded placement of its fan
24  formations.  *See York Wallcoverings, Inc. v. Coloroll Inc.*, 681 F. Supp. 1004, 1008
25  (E.D.N.Y. 1987) (no substantial similarity between where Court "impressed by the
26  openness of [defendant's design] and the crowded pattern of [plaintiff's] design. . . . .
27  The aesthetic appeal is not the same"; "the coincidence of finding similar flower buds

28

1 | and leaves in both designs is unremarkable.").

2 |   Finally, Plaintiff's design has a blue background; the accused design's is black.

3 |   These are not small, on-the-fringe dissimilarities.  These are wide-ranging

4 | differences that exist with respect to every creative expression and create two wholly

5 | dissimilar aesthetic appeals and impressions – in terms of the shapes of the individual

6 | components, the details and shapes within those components, the layering of them, the

7 | coloring of them, the spacing of them and the background of the designs.  *See, e.g.,*

8 | *Folio Impressions, Inc. v. Byer California*, 752 F. Supp. 583, 591-92 (S.D.N.Y. 1990)

9 | (no "substantially similar aesthetic appeal" because, *inter alia*, plaintiff's rose "has

10 | sharper edges, a three pronged stem, and presents a much more geometrically stylized

11 | appearance" while defendant's rose "has a single stem, is softer looking and the lines

12 | are more painterly and well rounded; listing additional differences."), *aff'd*, 937 F.2d

13 | 759, 761 (2d Cir. 1991) (noting the "[i]ntense competition in the field of fabric

14 | designs to be used for women's clothes"); *Just In-Materials Designs, Ltd. v. First*

15 | *Choice Fabrics, Inc.*, 1988 WL 5377, *1 (S.D.N.Y. Jan. 14, 1988) (no substantial

16 | similarity between fabric designs where, notwithstanding "a first quick impression of

17 | similarity[,] . . . the similarity fast disappears with attention to the design" because an

18 | "observer would not regard their 'aesthetic appeal' as the same.").

19 |   A finding that the accused peacock design infringes on Plaintiff's design would

20 | be to say that anybody who paints a picture of a sunset, for example, owns the rights

21 | to any other picture of a sunset, even if such other pictures contain different

22 | components, shapes, lights, colors and spacing and differ in all expressive aspects.

23 |   It cannot be said that the accused peacock design expresses and executes the

24 | idea of peacock feathers and formations in a manner "substantially similar" to

25 | Plaintiff's design.  The two designs express ideas that exist in nature and, because

26 | they are so dissimilar in execution, there can be no presumption of copying.  They are

27 | different artistic representations of a natural occurrence.  *See, e.g., Klauber Bros., Inc.*

28 |

1  *v. Westchester Lace Inc.*, 1989 WL 31679, *13 (S.D.N.Y. Mar. 30, 1989) (applying

2  "[t]he controlling fundamental principle [that] there is no copyright infringement

3  when only the idea, but not the expression, is copied" and finding "no actionable

4  wrong in the use of similar concepts").

5  　　Once the Court "filter[s] out and disregard[s] the non-protectable elements" of

6  plaintiff's design, *Cavalier*, 297 F.3d at 822, i.e., those common to any peacock

7  design, it is clear that no similarities remain between the two designs at issue here.

8  　　Courts uniformly dismiss copyright infringement claims under these

9  circumstances. *See Data East USA, Inc. v. Epyx, Inc.,* 862 F.2d 204, 208 (9th Cir.

10  1988) (no copyright infringement of karate video game where the only similar

11  elements "necessarily follow from the *idea* of a martial arts karate combat game, or

12  are inseparable from, indispensable to, or even standard treatment of the *idea* of the

13  karate sport."); *Sun Hill Indus., Inc. v. Four Seasons Products, Inc.*, 1993 WL 77384,

14  *4 (S.D.N.Y. Mar. 16, 1993) (granting summary judgment where "I have examined

15  all the evidence, including the actual bags, and I cannot say that there is any fact issue

16  as to whether the bags are substantially similar. The parties' products are both

17  pumpkin bags, but, as described above, the similarity stops there."); *Lenox Inc. v.*

18  *Ranmaru U.S.A. Corp.*, 1990 WL 263435, *4 (S.D.N.Y. Aug. 13, 1990) (no

19  substantial similarity because, while "both [plates] have blue lines and both have

20  flowers, . . . [t]he differences are manifold,"; listing many "discernible differences");

21  *Klauber Bros., Inc.*, 1989 WL 31679, *11 (although the two "designs are similar in

22  that they both utilize a fan or shell configuration . . . , the concept of lace designs

23  comprising fans or shells . . . [is] not new in the lace industry . . . and there are

24  significant disparities between the two designs in their individual elements and overall

25  appearance that preclude a finding of substantial similarity"); *see also Cameron*

26  *Indus., Inc. v. Mother's Work, Inc.*, 338 F. App'x 69, 71 (2d Cir. 2009) (no substantial

27  similarity between textile patterns because the differences do not "fade away when

28

1  they are viewed from a distance"; "[w]e do not find the differences between the
2  fabrics to be 'slight.' [Plaintiff's] design is larger and more orderly, presenting rows
3  of shapes rather than a jumble of shapes.").

4      In sum, there is no similarity in protectable expression between the two fabrics.
5  The only similarity is that which "inevitably stems solely from the commonality of
6  the subject matter [which] is not proof of unlawful copying," *Durham Indus., Inc.*,
7  630 F.2d at 913. The copyright infringement claim fails as a matter of law.

8  **B.      The Claim for Vicarious / Contributory Infringement Must Fail**

9      Because Plaintiff's claim of direct infringement fails as a matter of law,
10  Plaintiff's claims for vicarious and/or contributory infringement fail as well. *See*
11  *Arista Records LLC v. Myxer Inc.*, 2011 WL 11660773, *45 (C.D. Cal. Apr. 1, 2011).

12  **C.      The Complaint Should be Dismissed for Lack of Personal Jurisdiction**

13      "[A] state court may exercise personal jurisdiction over a nonresident defendant
14  only so long as there exist 'minimum contacts' between the defendant and the forum
15  State . . . such that maintenance of the suit 'does not offend traditional notions of fair
16  play and substantial justice.'" *World-Wide Volkswagen v. Woodson*, 444 U.S. 286,
17  291-92 (1980), quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945).

18
19      The minimum contacts standard may be met in two ways: the court may
     either assert specific jurisdiction where the cause of action arises out of
     the contact with the forum state, or the court may assert general
20   jurisdiction where the contacts with the forum state are substantial
     enough to warrant jurisdiction in any cause of action against the
21   defendant.

22  *New Tech Stainless Steel Products Co., Ltd. v. Sun Mfg. Corp.*, 2004 WL 1773416, *1
23  (C.D. Cal. July 20, 2004) (Klausner, J.) ("*New Tech*").

24      **1.      Defendants are not Subject to General Jurisdiction**

25      A court may assert general jurisdiction over out-of-state defendants "when their
26  affiliations with the State are so 'continuous and systematic' as to render them
27  essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v.*
28  *Brown*, 131 S. Ct. 2846, 2851 (2011). The defendant's "continuous and systematic

1  general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466

2  U.S. 408, 416 (1984), must "approximate physical presence" in the forum state,

3  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

4       To determine whether a nonresident defendant's contacts are sufficient, Courts

5  consider their "[l]ongevity, continuity, volume, economic impact, physical presence,

6  and integration into the state's regulatory or economic markets." *Tuazon v. R.J.*

7  *Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir. 2006). "Factors . . . are

8  whether the defendant makes sales, solicits or engages in business in the state, serves

9  the state's markets, designates an agent for service of process, holds a license, or is

10  incorporated there." *Bancroft & Masters, Inc.*, 223 F.3d at 1086 (no jurisdiction

11  where corporation not registered or licensed in California, paid no taxes, had no bank

12  accounts, targeted no advertising toward California). It "is an exacting standard, as it

13  should be, because a finding of general jurisdiction permits a defendant to be haled

14  into court in the forum state to answer for any of its activities anywhere in the world."

15  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).

16       Facts demonstrating that no Defendant has "continuous and systematic general

17  business contacts" in California are above in Section A of the Statement of Facts.

18       Defendants are not subject to general jurisdiction in California. *See*

19  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)

20  (defendant "has no offices or staff in California; is not registered to do business in the

21  state; has no registered agent for service of process; and pays no state taxes" and has

22  no "operations" there); *New Tech,* 2004 WL 177341, *2 ("no offices, manufacturing

23  facilities, employees, officers, directors, sales agents or representatives, or licensees";

24  "[Defendant] sells products nationwide, and does not specifically target California.");

25  *BJI Energy Solutions, LLC v. Artemis Technologies d/b/a Alpha-Lite*, 2004 WL

26  1498164, *2 (C.D. Cal. June 17, 2004) (Klausner, J.) (no California property or

27  facility, office, mailing address, telephone, fax, answering or message service,

28

1   vehicles, bank accounts, employees or agents and do not target California).

2   To be sure, Blue Plate's isolated, occasional and unsolicited sales to California

3   purchasers – totaling 1.1% of Blue Plate's total sales since January 1, 2011, Anand

4   Decl., ¶¶ 23, 24 – are plainly insufficient.  "[I]solated contact with the forum state . . .

5   will not support general jurisdiction." *Tuazon,* 433 F.3d at 1173; *see also Glencore*

6   *Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1124–25 (9th

7   Cir. 2002) (no general jurisdiction where only contacts with California were sixteen

8   shipments of rice); *Bancroft & Masters, Inc.,* 223 F.3d at 1086 ("occasional,

9   unsolicited sales of tournament tickets and merchandise to California residents" and

10   license agreements with California vendors insufficient); *Brand v. Menlove Dodge,*

11   796 F.2d 1070, 1073 (9th Cir. 1986) ("occasional" sales to forum insufficient).

12   Lastly, while Blue Plate maintains a website accessible world-wide, this does

13   not render it subject to general jurisdiction in California.  The Ninth Circuit has noted:

> Interactive websites where a user can exchange information
> with the host computer are now extremely common.  If the
> maintenance of an interactive website were sufficient to
> support general jurisdiction in every forum in which users
> interacted with the website, the eventual demise of all
> restrictions on the personal jurisdiction of state courts would
> be the inevitable result.

18   *CollegeSource,* 653 F.3d at 1075-76 (citations omitted); *see also Schwarzenegger,*

19   374 F.3d at 801 (rejecting general jurisdiction where Defendant "maintains an

20   Internet website accessible by anyone capable of using the Internet, including people

21   living in California"). Defendants are not subject to general jurisdiction.

22   **2.    Defendants are not Subject to Specific Jurisdiction**

23   To establish that Blue Plate is subject to specific jurisdiction, Plaintiff must

24   demonstrate that Blue Plate made sales of clothing containing the accused peacock

25   design, *with knowledge that Plaintiff was the copyright holder and lived in California,*

26   expressly targeting Plaintiff's business in California.  Plaintiff cannot do this.

27   The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

28

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id. at* 801-02.  Any argument that this test is satisfied here is wholly without merit.

### a.   The Purposeful Direction Test is not Satisfied

Under the first prong of the three-part test, a plaintiff must establish that defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. Purposeful direction is for tort actions. *Id.* Copyright claims are analyzed as torts. *Browne v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009).

Purposeful direction is evaluated using the three-part test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803.

The three-part test requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. All three parts of the test must be satisfied.

*Id.* at 805 (quotation, citation omitted).  Plaintiff cannot meet element 1 or 2.

The Ninth Circuit has "repeatedly stated" in infringement cases that, to satisfy the "express aiming" requirement, defendant must "have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (quotation omitted). "'[U]ntargeted negligence' that merely happened to cause harm to [a plaintiff]" is not express aiming. *Schwarzenegger*, 374 F.3d at 807, quoting *Calder*, 465 U.S. at 789. In *Washington Shoe*, the Ninth Circuit held:

[Defendant's] intentional acts were expressly aimed at the copyright held by [Plaintiff] because [Defendant] *knew* that its intentional acts would

> impact [plaintiff's] copyright by virtue of the cease-and-desist letters it
> had received. Where [defendant] *knew or should have known* that
> [plaintiff] is a Washington company, [defendant's] intentional acts were
> expressly aimed at the state of Washington.

704 F.3d at 678 (emphasis in original). Thus, "express aiming" requires plaintiff

allege "infringement of [its] copyright, and [defendant's] knowledge of both the

existence of the copyright and the forum of the copyright holder." *Id.*; *see also*

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)

("'express aiming' encompasses wrongful conduct individually targeting a known

forum resident"). Thus, "[i]n order for the 'express aiming' element of the effects test

to be satisfied, the Defendant must know that the plaintiff is a resident of the forum

state and that the harm resulting from the intentional act will be suffered in the forum

state." *Katzenbach v. Grant*, 2005 WL 1378976, *7-8 (E.D. Cal. June 7, 2005), citing

*Bancroft,* 223 F.2d at 1087.

 *Washington Shoe* applies *Calder*, in which defendants' actions were "expressly

aimed at California" because defendants "knew the brunt of th[e] injury would be felt

by [plaintiff] in the State in which she lives and works." *Calder,* 465 U.S. at 789–90;

*see also Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc*., 106

F.3d 284, 289 (9th Cir. 1997) (defendant "infringed copyrights owned by [plaintiff],

which, as [defendant] knew, had its principal place of business in the Central District

[of California].")*; Righthaven, LLC v. Va. Citizens Def. League, Inc.*, 2011 WL

2550627, at *3 (D. Nev. June 23, 2011) (defendant infringed copyrights owned by

plaintiff, "which, as the defendant knew, had its principal place of business in the

forum" (brackets omitted)); *Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, 2009 WL

2486163, *2 (W.D.Wash. Aug. 12, 2009) (Defendant "infringed copyrights owned by

plaintiff and alleging that defendant knew plaintiff's headquarters was in

Washington."); *Amini Innovation v. Cosmos Furniture, Ltd.*, 2009 WL 806603, at *3

(C.D.Cal. Mar. 16, 2009) (defendant "*knew* that [plaintiff] [was] located in" forum

and "kn[ew] the brunt of the harm would be suffered" there).

1  Here, Blue Plate indisputably did not even know that Plaintiff existed until this

2  dispute arose.  *See* Anand Decl., ¶¶ 35-38 (summarized above at pages 4-5).

3  Because no Defendant "targeted . . . a plaintiff whom the defendant knows to

4  be a resident of [California]," *Washington Shoe Co.*, 704 F.3d at 675, there can be no

5  specific jurisdiction.  *See Hanevold v. Hsu*, 2011 WL 6026513. *4 (E.D. Cal. Dec. 2,

6  2011) ("Because the plaintiff has not shown that defendant knew of her California

7  residence . . . , the Court finds that specific personal jurisdiction under the 'effects'

8  test is not appropriate."); *see also Wood v. Northwest Airlines, Inc.,* 2010 WL

9  2485946, *4–5 (D.Ha. 2010) ("Plaintiff merely speculates that Defendant knew

10 Plaintiff was a Hawaii resident"; defendant did not act "with the specific purpose of

11 harming an individual in the forum state"); *Zuffa, LLC v. Showtime Networks, Inc.*,

12 2007 WL 2406812, *9 (D. Nev. Aug. 17, 2007) ("no facts alleged here that

13 [Defendants] were aware that the allegedly infringing footage belonged to Plaintiff or

14 that Defendants knew or should have known that the allegedly infringing footage

15 would harm Plaintiff in Nevada."); *Katzenbach v. Grant*, 2005 WL 1378976, *7-8

16 (E.D. Cal. June 7, 2005) ("no evidence that Defendant Grant knew that [Plaintiff] was

17 a resident of California."); *see also Lang v. Morris*, 823 F. Supp. 2d 966, 975 (N.D.

18 Cal. 2011) (while "Plaintiffs have met their burden at this stage to show that

19 Defendant knew Lang resided in California, . . . Plaintiffs have failed to make a prima

20 facie showing that Defendant has targeted Lang to compete with him in California.").

21 Plaintiff cannot satisfy the "express aiming" prong of *Calder* and thus cannot

22 establish purposeful direction.  Therefore, the Court lacks specific jurisdiction.

23 **b.**   **Blue Plate's *De Minimus* Sale in California is Insignificant**

24 Blue Plate's sole, de minimus sale to Customer B worth $2,616 is described at

25 pages 6-7 of the Statement of Facts.  This sale does not warrant specific jurisdiction.

26 This sale involved no purposeful contact by Blue Plate directed at California.

27 Blue Plate did not initiate contact or take any affirmative action to solicit or promote

28

1    this business. *See Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (no specific

2    jurisdiction because defendant "did not solicit [plaintiff's] business in California;

3    [plaintiff] came to [defendant] in Florida. . . . [N]either [defendant] nor any of its

4    partners undertook any affirmative action to promote business within California.").

5         But even if this sale is purposeful conduct for jurisdictional purposes, this

6    Court has already held that such an isolated, *de minimus* sale – a mere $2,616 (or

7    0.2% of Blue Plate's total sales that year) – is insignificant to warrant personal

8    jurisdiction. *See New Tech Stainless Steel Products Co. v. Sun Mfg. Corp.*, 2004 WL

9    1773416 (C.D. Cal. July 20, 2004) ("*New Tech*") (Klausner, J.).  In *New Tech*, this

10   Court held that "a single sale of the allegedly infringing product worth merely

11   $8,800" was "insignificant" and did not warrant personal jurisdiction. *Id.*, *3.

12        As *New Tech* observed, a company that "'place[s] its products in the stream of

13   interstate commerce with the expectation that they will be sold to consumers in the

14   forum state' may be subject to specific jurisdiction.'" *Id.*, quoting *World-Wide*

15   *Volkswagen Corp.*, 444 U.S. at 297-98.  First, Blue Plate could not have had an

16   expectation that Customer B, a solely Internet-based store with no brick-and-mortar

17   stores, might sell the blouses to Californians in particular.  Anand Decl., ¶ 48.  But

18   even if it could have, "[w]hether or not conduct rises to the level of purposeful

19   availment requires a constitutional determination that is affected by the volume and

20   value of the product." *New Tech*, 2004 WL 1773416, *3.  Blue Plate sold blouses

21   worth $2,616.  Like plaintiff *in New Tech*, who sued based on a single sale for $8,800,

22   Plaintiff here cannot "provide any relevant legal argument or precedent to show that

23   such an insignificant contact may warrant asserting personal jurisdiction." *Id.*[6]

24

25   [6]   *New Tech* noted that the website there did not allow parties to place orders for
     the allegedly infringing design and thus was "not interactive for the purposes of
26   establishing specific personal jurisdiction." *New Tech*, 2004 WL 1773416, *4.
     Blue Plate's website never offered for sale any items containing the accused
27   design. Anand Decl., ¶¶ 19 fn. 2, 44.  The sole sale of units containing the
     design to Customer B was an unsolicited, direct custom order. *Id.*, ¶¶ 43, 45.

28

1    The "stream of commerce" theory, moreover, requires an "established

2 distribution channel." *Tuna Processors, Inc. v. Anova Food, Inc.*, 2007 WL 3232609,

3 *3 (D. Or. Nov. 1, 2007) (rejecting the "stream of commerce theory" because

4 "[defendant] has no distribution network designed to bring its products into Oregon."

5 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir.

6 1994)).  Blue Plate indisputably has had no distribution channel, sales force,

7 representative, distributor or other channel targeting California.  Anand Decl., ¶¶ 16-

8 17. *See Hawaii Airboards v. Nw. River Supplies, Inc.*, 887 F. Supp. 2d 1068, 1076-77

9 (D. Haw. 2012) (rejecting "stream of commerce" theory where "[t]here is no evidence

10 that the [infringing product] reached the Hawaii market through an established

11 distribution channel" (citing *World-Wide Volkswagen*, 444 U.S. at 297)).

12    In *World-Wide Volkswagen Corp.*, the Supreme Court held that, "if the sale of a

13 product of a manufacturer or distributor . . . is not simply an isolated occurrence, but

14 arises from the efforts of the manufacturer or distributor to serve directly or indirectly,

15 the market for its product in other States, it is not unreasonable to subject it to suit in

16 one of those States." *Id*.  Blue Plate's isolated, unsolicited $2,616 sale to a California

17 purchaser is a random and fortuitous contact, not the result of purposeful conduct

18 directed at California, and is insignificant for jurisdictional purposes.

19    **c.    Blue Plate's Website Cannot Support "Express Aiming"**

20    As noted, Blue Plate's website has never offered for sale any item containing

21 the accused peacock design.  Anand Decl., ¶¶ 19 fn. 2, 44.  In any event, Courts

22 uniformly reject "express aiming" based on a defendant's operation of a website that

23 is accessible to the public, including residents of the forum state.

24       "If the defendant merely operates a website, even a highly interactive
       website, that is accessible from, *but does not target*, the forum state, then
25       the defendant may not be haled into court in that state without offending
       the Constitution."

26 *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012),

27 quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (emphasis added).

28

1    In order to have express aiming based on a website, the Ninth Circuit requires

2  "something more" than mere website operation; the website must have "individually

3  targeted" consumers in the forum. *Brayton Purcell LLP v. Recordon & Recordon,*

4  606 F.3d 1124, 1130, 1132 (9th Cir. 2010) (website "individually targeted" when it

5  made "commercial use of [plaintiff's] copyrighted material for the purpose of

6  competing with [plaintiff] for elder abuse clients" and "entered direct competition

7  with [plaintiff]"); *see also Mavrix Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d

8  1218, 1229-30 (9th Cir. 2011) (website used in "exploitation of the California

9  market," including with "advertisements directed to Californians."); *Rio Properties. v.*

10 *Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) (Defendant "specifically

11 targeted consumers" in Nevada "by running radio and print advertisements in Las

12 Vegas" and had "insistent marketing campaign directed toward Nevada").

13    Blue Plate's website has never "individually targeted" any consumer in the

14 forum State.  Nothing on Blue Plate's website is directed to California or even

15 references California.  *See DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871,

16 881 (N.D. Cal. 2012) (rejecting argument that website satisfied "express aiming"

17 requirement because "Plaintiffs do not identify anything on the Websites that is

18 directed to California or even references California").

19           **d.     Defendants Could Not Have Knowingly Caused Harm in**
                       **California**

20

21    The third prong of the *Calder* test requires that the allegedly wrongful conduct

22 cause harm that "the defendant knows is likely to be suffered in the forum state." *See*

23 *Schwarzenegger,* 374 F.3d at 803.  As established, Blue Plate purchased the accused

24 design via a manufacturer in India who bought it on the open market there.  Anand

25 Decl., ¶¶ 29-30.  Defendants had never even heard of Plaintiff before Blue Plate

26 received notice from Plaintiff that it purportedly believed the accused design infringed

27 Plaintiff's design. *Id.*, ¶¶ 36-38.  Blue Plate made no use of the accused design after

28 receiving notice of Plaintiff's existence and copyright claims. *Id.*, ¶ 38, fn. 3.

1       Thus, even if Blue Plate conduct caused any harm (it did not), it is impossible

2 that Blue Plate could have knowingly caused harm to Plaintiff in California.

3           **e.**      **The Exercise of Jurisdiction Would Be Unreasonable**

4       The exercise of jurisdiction in this case would be unreasonable for several

5 reasons. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d

6 1120, 1136 (9th Cir. 2004). Defendants have not purposefully directed any conduct

7 toward California. Meanwhile, the burden of having to litigate in California – where

8 Defendants have no presence of any kind – is substantial. While California may have

9 an interest in protecting its residents from alleged copyright infringement, nothing

10 about the subject matter of this dispute especially implicates or concerns California.

11 The Central District is not necessarily a more efficient forum for any reason and there

12 exist a number of forums in which Defendants are subject to personal jurisdiction, i.e.,

13 in New York where Defendants operate.

14                       **<u>CONCLUSION</u>**

15       The moving Defendants respectfully request that the Court dismiss the

16 Complaint on the ground that Plaintiff's infringement claim fails as a matter of law

17 and that, in any event, the Court lacks personal jurisdiction.

18

19 Dated: New York, New York            POHL LLP
          September 30, 2014

20

21                             By:   /s/ David M. Pohl
                                  David M. Pohl

22

23                             345 Seventh Avenue, 21st Floor
                            New York, New York 10001

24                             (212) 202-1614
                            (646) 924-3100 (fax)

25

26                             *Attorneys for Defendants*

27

28